# Exhibit 25



# KAYE SCHOLER LLP

## MEMORANDUM

**TO:**       Files

**FROM:**    Arthur F. Woodard

**DATE:**    December 12, 2012

**SUBJECT:**  Argre

---

This is to memorialize the substance of our discussions with Argre[1] regarding the proposed investments by a 401(k) plan (the "Plan") in certain transactions involving the purchase and sale of foreign securities (an outline of the facts as provided in discussion with Argre is set forth in a draft memorandum attached hereto).

The discussions principally involved the risk of whether the Department of Labor (the "DOL") would view any of the transactions as "prohibited transactions" under Section 4975 of the Internal Revenue Code of 1986 (the "Code").[2]  If so, the transactions would be subject to the imposition of excise taxes, an obligation to "unwind" the transaction,  and other penalties. Our concerns centered on the following issues, each of which is discussed below:  (1) whether the compensation to be received by Solo is "reasonable" so as to be exempt from the prohibited transaction rules by reason of Code Section 4975(d)(2); (2) whether Argre is a "service provider"

---

[1]    References to Argre and Solo herein apply to affiliates of either as well.

[2]    We were advised that any Plan involved in such transactions would cover only self-employed individuals.  Such plans are not subject to the Employee Retirement Income Security Act of 1974, including the "prohibited transactions" requirements of that statute.

60965232_1.DOCX

Files                                    - 2 -                        December 12, 2012

to the Plan and, if so, whether the compensation it is to receive is "reasonable" so as to also be

exempt; and (3) whether the lending of securities in the transactions complies with Prohibited

Transaction Exemption 2006-16 which exempts the lending of securities by a plan from most of

the prohibited transaction requirements if certain conditions are satisfied.  Finally, we expressed

some concern that, if the Plan is one in which an employee or partner is a fiduciary, there may be

concerns under Section 4975(c)(1)(D), (E) or (F) of the Code.[3]

1.    _Solo's Compensation_

            To effect the transactions, Solo will render brokerage and other services to the

Plan on a continuing basis, making it a "service provider" to the Plan and hence a "disqualified

person" thereto.  Section 4975(c)(1)(C) of the Code prohibits the furnishing of goods and service

between a plan and a disqualified person.  Accordingly, absent an exemption, Solo's continued

involvement would be a prohibited transaction.  Section 4975(d)(2) of the Code exempts any

arrangement with a disqualified person for "services necessary for the establishment or operation

of the plan if no more than reasonable compensation is paid therefor."  The question of whether

compensation is reasonable is determined by the DOL, based on the facts and circumstances of a

particular arrangement.  We were advised that Solo initially will receive approximately 65% of

the gross gain in the transaction, but that, after payment of expenses, to other unrelated parties,

its net share will be approximately 25% of the gross gain (or more than 40% of the net gain).

We advised Argre that the DOL could well assert that a fee of this magnitude is unreasonable,

---

[3]    These sections respectively preclude the transfer of assets to or for the benefit of a
       fiduciary and prohibited a fiduciary from acting for his own account or in a position
       adversarial to the Plan.  For purposes of this memorandum, we have assumed that no
       such fiduciary relationship will exist.

60965232_1.DOCX

**CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER**                    **WH_MDL_00342579**

Files                                    - 3 -                          December 12, 2012

particularly in view of the much smaller share the Plan will receive (from three to five percent of

the net gain) because of the fees to Solo, Argre and the other parties..

In this regard, we noted that it does not appear that the DOL has challenged the

20% (or more), fee typically received by hedge funds in which many large qualified plans invest,

but added that this fee is virtually uniform among hedge funds (and thus could be viewed as a

"market rate"), meaning that a finding that it is unreasonable would make it impossible for

qualified plans to invest with such funds.  We have no information as to whether firms other than

Solo are involved in comparable transactions or, if they are, what compensation they are

receiving.  We also noted that a hedge fund investor receives the remaining 80% of the net gain

in value of an investment whereas the Plan's net gain will be only 3-5%.  These differences

could be cited as a reason by the DOL to determine that Solo's compensation is unreasonable,

thus making the exemption for reasonable compensation inapplicable.

**2.    _Argre's Status_**

We understand that the documents for the transaction indicate that Argre's

participation will be limited to bringing the investment model to the Plan's attention and to enter

into a swap agreement with the Plan.  Under this agreement, Argre will advance the Plan the

funds needed to begin trading in return for a specified portion of the net gain.  If this structure is

accepted by the DOL, our view was that Argre should not be seen as a "service provider" to the

Plan and therefore a "disqualified person".  We noted, however, that the issue is not entirely free

from doubt and that the DOL could take a contrary position.  We also noted that, under the

proposed structure, Adam LaRosa, who currently is a partner in Argre, will completely

disassociate himself from Argre and will effect trades on behalf of the Plan as an agent thereof.

He thus will be a fiduciary and a disqualified person.  The danger to Argre is that the DOL could

60965232_1.DOCX

Files                                         - 4 -                                 December 12, 2012

take the position that Mr. LaRosa was not acting as an independent investment advisor but as an

agent of Argre.  In such case, Argre would be a disqualified person and, like Solo, would have to

defend as reasonable its total compensation of approximately fifty percent (50%) of the net gain.

This again would be a facts and circumstances issue with the risk that the DOL would not the

transaction not to be exempt.

**3.**      *__Securities Lending__*

            We were advised that, in order to effect the transaction, Solo will have to lend

some of the securities belonging to the Plan to Aquila, an affiliate of Solo who, according to

Argre, will be acting as a broker-dealer. The lending of securities from a plan to a broker dealer.

including a non-U.S. broker-dealer, would be a prohibited transaction but may be exempted if it

meets the requirements of Prohibited Transaction Exemption 2006-16.  To utilize this exemption,

a number of conditions must be met, among them that the borrower must pledge required levels

of collateral and the plan must receive a portion of the proceeds of investing the collateral.  We

were advised that (1) Aquila will pledge collateral and that the Plan will receive a portion of the

income generated by the investment of that collateral, and (2) the collateral pledged by Aquila

and the amount of compensation received by it, the Plan and the others involved in the lending

process are consistent with the manner in which securities are lent in the U.K. and Europe.

Without additional details of the lending transactions, we were unable to advise that the lending

fully complies with PTE 2006-16 and noted that, if it does not, the excise taxes, obligation to

"unwind" the transaction and other penalties imposed by Code Section 4975 could apply.

60965232_1.DOCX

**CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER**            **WH_MDL_00342581**