IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br><br>18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713. | MASTER DOCKET<br>18-md-2865 (LAK) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
SKATTEFORVALTNINGEN'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE
<u>REGARDING SVEN NIELSEN'S CRIMINAL CONVICTION</u>**

Defendants, by and through their undersigned counsel, respectfully submit this opposition to plaintiff Skatteforvaltningen's ("SKAT") Memorandum of Law in Support of Its Motion *in Limine* to exclude evidence regarding former SKAT employee Sven Nielsen's criminal conviction, ECF No. 1352 ("SKAT's Motion").[1] Mr. Nielsen was convicted in Denmark in 2017 for his role in causing false refund claims to be issued to an acquaintance between 2006 and 2011. Nielsen's scheme involved none of the defendants in this action and was discovered by SKAT long before the first reclaim at issue in this case was ever submitted. Although SKAT suspected him of wrongdoing beginning in 2011 it did nothing to replace him during the period at issue in this case, when he was the sole SKAT employee responsible for processing Defendants' refund claims. These facts are relevant and important because they show (i) SKAT's negligence in failing to put in place appropriate personnel and processes to verify refund claims and (ii) SKAT's lack of reasonable reliance on Defendants' refund claims. There is no basis for excluding evidence of Mr. Nielsen's fraud. SKAT's other evidentiary objections also lack merit.

### 1. Mr. Nielsen's Fraud Reflects Deficiencies in How SKAT Reviewed Refund Claims

SKAT's reliance on the Court's September 18, 2024 order (ECF No. 1195, the "September 18 Order") overlooks the Court's refusal to exclude evidence "show[ing] that SKAT lacked the ability or otherwise failed to verify the veracity of refund claims." SKAT focuses on the mechanics

---

[1] "Defendants" are John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan, Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust, Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan and The Stor Capital Consulting LLC 401K.

of Mr. Nielsen's fraud rather than on the more crucial fact: the fraud was committed ***by the sole SKAT employee responsible for processing refund claims***. Without knowledge of Mr. Nielsen's fraud, the jury would receive an incomplete and misleading view of a key question in this case: whether SKAT had appropriate personnel and processes to review and approve Defendants' refund claims. The jury could reasonably infer from Mr. Nielsen's fraud—and SKAT's knowledge of it—that the answer is no for multiple reasons, each of which warrants admission of evidence concerning Mr. Nielsen's fraud.

First, Mr. Nielsen's fraud—which involved paying false refund claims—shows that he was not fit for his position. This stands in stark contrast to the evidence SKAT otherwise seeks to introduce about Sven's competence. For example, SKAT has designated as trial evidence Lisbeth Romer's testimony in which she claims Nielsen was "hard working" and "very competent" in response to questions posed by SKAT's counsel. Decl. of Maxwell W. Brown dated Jan. 6, 2025 ("Brown Decl."), Ex. 1 (Romer Depo. 221:9–14). The jury cannot meaningfully evaluate SKAT's ability to verify refund claims without understanding the staff SKAT assigned to process them, and without the evidence of Nielsen's conviction, the jury would be left with a distorted view of the single individual SKAT saw fit to leave in control of the withholding tax refund process. Even SKAT presumably now agrees that Mr. Nielsen—as a "former employee" who "abused his position" in a way that resulted in his being sentenced to six years in prison (SKAT's Motion at 1)—was unfit to continue being the employee responsible for processing refund claims. The fact that Mr. Nielsen was in that role during the relevant period reflects deficiencies in SKAT's oversight and due diligence in reviewing refund claims.

Mr. Nielsen's fraud further undermines SKAT's dubious contention that it had adequate staffing and resources to process refund claims. Given that "there were no written guidelines" for approving reclaim applications, and the "guidelines were, so to speak, in the mind of Sven because

2

he was the one who was processing and handling all applications," Brown Decl. Ex. 2 (UK Main Trial Transcr. Day 9, 56:3–7 (SKAT_MDL_001_00836384)), SKAT's contention requires rigorous scrutiny.  At least one SKAT employee has testified that Mr. Nielsen "never" reported that "as a result of lack of personnel or resources he was unable to perform the required controls when he was reviewing dividend withholding tax refund applications."  Brown Decl. Ex. 3 (Madsen Depo. 148:1–12).  But Mr. Nielsen's fraud created a strong incentive for him to *not* request additional staffing that would have assisted or supervised him.  If the jury knew that Mr. Nielsen "abused his position" to commit fraud, it could reasonably infer that Mr. Nielsen wanted to avoid additional scrutiny or sharing of his work, at the cost of better safeguards for SKAT in reviewing refund claims.  Of course he did not tell his superiors there was insufficient personnel looking over his shoulder.  The jury could find that an honest employee would have sought assistance in reviewing and approving the refund claims at issue.

### 2. Failing to Detect Alleged Fraud Was a Foreseeable Consequence of SKAT's Negligent Retention of Mr. Nielsen

SKAT argues that there is no causal link between Mr. Nielsen's fraud and his approval of the refunds at issue in this case, but that argument does not absolve SKAT of its own negligence.  The relevant failures were not limited to Mr. Nielsen alone.  SKAT "tilts at a windmill by arguing that it could not have known that" Defendants would submit allegedly improper refund claims; rather, the point is that SKAT placed itself at risk by giving the authority to approve refunds to an employee (correctly) suspected of dishonest conduct.  *Benoit v. Metro. Transp. Auth.*, No. 15 Civ. 6095 (JFK), 2016 WL 6902190, at *5 (S.D.N.Y. Nov. 21, 2016) (finding whether MTA was negligent in pairing plaintiff with officer with "reputation for failing to assist his partners" was issue for trial); *see also G.P. v. State*, 201 N.Y.S.3d 612, 624 (N.Y. Ct. Cl. 2023) (holding state liable for injuries caused by negligent retention of employee where state agency had reason to know of

employee's solicitation of bribes in exchange for official action).² Despite learning that Mr. Nielsen was under investigation for misconduct in 2011, SKAT left Mr. Nielsen as the sole person responsible for reviewing refund claims for several more years (including those relevant to this case). Upon learning of the allegations against Mr. Nielsen, a reasonable party would have taken steps to review and strengthen its processes for reviewing refund claims, but SKAT did not act. The jury could find that SKAT was negligent in retaining an employee suspected of dishonest and self-dealing conduct without at least adding safeguards or supervision.

Given the plain foreseeability that Mr. Nielsen would fail to report fraud or take steps to detect fraud, SKAT cannot avoid being found comparatively negligent or having assumed the risk of loss by pointing to another alleged fraud as an intervening cause. *See Fed. Deposit Ins. Corp. v. Lamattina*, 910 N.Y.S.2d 762 (Table), 2010 WL 2431621, at *4 (N.Y. Sup. Ct. 2010) (rejecting intervening cause argument because a party "is not relieved of liability if the intervening act is one that . . . could reasonably have been foreseen"); *Turcotte v. Fell*, 68 N.Y.2d 432, 439 (1986) (noting reasonable foreseeability is the basic threshold for finding a plaintiff assumed the risk of injury). Moreover, "[t]he issue of whether an intervening act relieves" a party "is for the jury." *Lamattina*, 2010 WL 2431621, at *4. The jury could find that it was foreseeable that a dishonest employee who abused his position to commit fraud would fail to report potential fraud to his employer or fail to request additional staffing and resources that would detect fraud.

### 3. Mr. Nielsen's Credibility Is Likely an Issue at Trial

Mr. Nielsen not only played an important role in approving Defendants' refund claims, but

---

² *See also* Restatement (Second) of Agency § 213, comment d ("Liability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.").

4

he also participated in SKAT's investigation into their alleged misconduct. As part of SKAT's investigation, Christian Ekstrand ultimately interviewed Nielsen. *See* Brown Decl. Ex. 4 (Ekstrand Depo. 277:18–278:18); *see also id.* at 214:3–215:19 (testimony suggesting that Nielsen was less than forthcoming in response to Ekstrand's initial outreach); Brown Decl. Ex. 5 (emails suggesting the same). SKAT has identified Mr. Ekstrand as the first witness it intends to call at trial. To the extent SKAT intends to present evidence through Ekstrand of the reasonableness of its investigation that in any way turns on information provided by Nielsen, the latter's credibility is an issue for the jury. Evidence of a criminal conviction "for a crime that, in the convicting jurisdiction, was punishable . . . by imprisonment for more than one year . . . ***must be admitted***, subject to Rule 403, in a civil case." Fed. R. Evid. 609 (emphasis added). Since the Danish courts sentenced Mr. Nielsen to six years imprisonment for his fraud, Rule 609 will apply to any statements by Mr. Nielsen (which need not comprise testimony, as discussed below) admitted into evidence.

**4. The Probative Value of Evidence Concerning Mr. Nielsen's Fraud Easily Outweighs Countervailing Concerns**

For the reasons discussed above, this evidence is relevant and has high probative value that outweighs any risks contemplated by Rule 403. For the evidence to be excluded, not only would the opposite have to be true, but the imbalance would have to be "substantial." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997).

However, there is no "unfair" prejudice to SKAT in allowing admission of evidence regarding Mr. Nielsen's fraud. The evidence may be damaging to SKAT's case, but that does not render it unfair. *Id.* (the "prejudice that Rule 403 is concerned with involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence").

Nor is there a meaningful risk that the jury would be confused or misled by this evidence. SKAT succinctly explained the difference between Mr. Nielsen's fraud and Defendant's alleged

5

conduct in their Motion, and there is no reason to believe SKAT cannot do the same for the jury. To the extent any risk of confusion would remain, the answer is a limiting instruction from the Court, not the complete exclusion of relevant evidence. There is no basis for SKAT's taking such a dim view of the jury's reasoning abilities. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("[A] jury is presumed to understand a judge's answer to its question."); *United States v. Ferguson*, 676 F.3d 260, 292 (2d Cir. 2011) ("[J]uries are presumed to follow their instructions.").

SKAT also suggests that introducing evidence of Mr. Nielsen's fraud would take an excessive amount of time, but all indications are to the contrary. The parties have identified thousands of trial exhibits, and SKAT's Motion objects to a mere four of them that relate to Mr. Nielsen's fraud. Issues relating to Mr. Nielsen's fraud would be a very small portion of the trial. There is no need for a trial within a trial, especially given that SKAT does not actually dispute that Mr. Nielsen abused his position and was sentenced to imprisonment. SKAT should not be allowed to hide from the jury Mr. Nielsen's conviction, or SKAT's retention of him after he was under investigation for fraud.

### 5. SKAT's Hearsay Objections Fail

Finally, SKAT argues that certain statements relating to Mr. Nielsen's fraud are inadmissible hearsay.[3] Even if that were the case, it would justify excluding only specific statements, not all evidence of Mr. Nielsen's fraud. SKAT's hearsay objections are also flawed in other ways. Many of the statements SKAT identifies are ***not hearsay*** at all.

SKAT objects that Mr. Nielsen was not deposed in this case, but that does nothing to change the role he played in the underlying facts or the admissibility of evidence relating to that role. Federal Rule of Evidence 801(d)(2)(D) provides that a statement "offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship

---

[3] Defendants do not intend to offer the judgment as evidence.

6

and while it existed" is not hearsay. Thus, Defendants' introduction of statements by Mr. Nielsen and others made during the time and within the scope of their employment by SKAT are not hearsay. Presumably, many statements by SKAT employees will be admitted into evidence of trial, and the Federal Rules of Evidence permit the impeachment of non-testifying declarants such as Mr. Nielsen. Rule 806 provides that when "a statement described in Rule 801(d)(2)(C), (D), or (E)" is "admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness."

To the extent there are hearsay statements regarding Mr. Nielsen's fraud not covered by the above or other hearsay exceptions, the Court may admit them under the residual exception, which requires that "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807. The circumstances here prove the trustworthiness of the statements regarding Mr. Nielsen's fraud and conviction: not only does ample evidence exist showing that Mr. Nielsen was convicted of fraud, but SKAT admits that he was so convicted.

For the reasons set forth above, the Court should deny SKAT's motion and allow admission of evidence regarding Mr. Nielsen's fraud and criminal conviction.

Dated: New York, New York
       January 6, 2025

Respectfully submitted,

/s/ *Peter G. Neiman*
Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352

Andrew.Dulberg@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

/s/ *Sharon L. McCarthy*
Sharon L. McCarthy
Maxwell W. Brown
KOSTELANETZ LLP
7 World Trade Center
250 Greenwich Street
34th Floor
New York, NY 10007
(212) 808-8100
smccarthy@kostelanetz.com
mbrown@kostelanetz.com

Nicholas S. Bahnsen
Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
nbahnsen@kostelanetz.com
ddavidson@kostelanetz.com

*Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

/s/ *David L. Goldberg*
David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*